# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY Z. NEELY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1551-CJB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |
| | ) | |

---

Angela Pinto Ross, DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Wilmington, Delaware, Attorney for Plaintiff.

David C. Weiss, United States Attorney, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF DELAWARE, Wilmington, DE; Brian O'Donnell, Regional Chief Counsel; Quinn Niblack-Doggett, Assistant Regional Counsel and Margaret W. Reed, Special Assistant United States Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, PA, Attorneys for Defendant.

---

## **MEMORANDUM OPINION**

October 17, 2022
Wilmington, Delaware

---

[1]       Kilolo Kijakazi was sworn in as the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for former Commissioner of Social Security Andrew Saul, who was originally named as Defendant in this suit.

*Christopher J. Burke*

**BURKE, United States Magistrate Judge**

Plaintiff Timothy Z. Neely ("Neely" or "Plaintiff") appeals from a decision of Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying Neely's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), and supplemental security income ("SSI") benefits under Title XVI of the SSA. *See* 42 U.S.C. §§ 401-34 & 1381-1383f. The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by Neely and the Commissioner (the "motions"). (D.I. 12; D.I. 14) Neely asks the Court to reverse the Commissioner's decision and either remand to the Commissioner with an instruction that benefits be awarded or remand for further proceedings. (D.I. 13 at 1, 20) The Commissioner opposes that request and asks that the Court affirm her decision. (D.I. 16 at 7) For the reasons set forth below, Neely's motion for summary judgment will be GRANTED-IN-PART and DENIED-IN-PART, the Commissioner's cross-motion for summary judgment will be DENIED and the case will be REMANDED to the Commissioner for further proceedings consistent with this opinion.

## I.    BACKGROUND

### A.    Procedural Background

On April 24, 2018 and April 26, 2019, Neely applied for DIB and SSI benefits, respectively; he alleged disability beginning on October 11, 2016. (D.I. 9 (hereinafter "Tr.") at 100-101, 113, 194, 208, 232; D.I. 13 at 2) His claim was denied initially and then again upon reconsideration. (Tr. at 113-17, 125-30) Neely then filed a request for an administrative

hearing.  (*Id.* at 136-37)  On January 7, 2020, a hearing was held before an Administrative Law

Judge ("ALJ"), at which Neely was represented by counsel.  (*Id.* at 61-97, 156)

On January 28, 2020, the ALJ issued a decision denying Neely's request for benefits.

(*Id*. at 43-52)  Neely requested review of the ALJ's decision by the Appeals Council, and the

Appeals Council later denied Neely's appeal on the merits.  (*Id.* at 1-4)  Thus, the ALJ's decision

became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.955 & 404.981; *Sims v.*

*Apfel*, 530 U.S. 103, 106-07 (2000).

On November 18, 2020, Neely filed a Complaint in this Court seeking judicial review of

the ALJ's decision.  (D.I. 1)  On July 9, 2021, Neely filed his motion for summary judgment.

(D.I. 12)  The Commissioner opposed Neely's motion and filed a cross-motion for summary

judgment on August 3, 2021.  (D.I. 14)  Briefing on the respective motions was completed on

September 3, 2021.  (D.I. 18)  And on November 9, 2021, the parties consented to the Court's

jurisdiction to conduct all proceedings in this action, including entry of a final judgment.  (D.I.

20)

### B.      Factual Background

At the time of the alleged onset of his disability on October 11, 2016, Neely was 54 years

old; at the time of the ALJ's decision in January 2020, he was 57.  (*See* Tr. at 100)  Neely is a

high school graduate, (*id*. at 233), and has past work experiences as, *inter alia*, a billing clerk and

closing clerk.  (*Id*. at 221; *see* D.I. 13 at 3).

### 1.      Plaintiff's Medical History, Treatment, and Condition

Neely alleges that he has been disabled and unable to work since October 2016 due to

various medical conditions related to a serious car accident.  (Tr. at 232, 300)  Relevant evidence

of record regarding those conditions is set out below.

### a.   Physical Medical History[2]

Neely alleges that he suffers from the following physical conditions stemming from the accident:  (1) cervical radiculopathy; (2) lumbar radiculopathy; (3) lumbar spinal stenosis; and (4) chronic pain.  (*Id*. at 93, 232, 712-13; D.I. 13 at 2, 6)  With regard to his cervical and lumbar radiculopathy, a nerve conduction study and needle electromyography ("EMG") led to Neely being diagnosed, *inter alia*, with those conditions in late 2016.  (Tr. at 300-01, 307, 721-22)  As to Neely's lumbar spinal stenosis, an MRI of the cervical and lumbar spine resulted in Neely's diagnosis around that same time.  (*Id.* at 296, 301)  Despite injections, several surgeries, and physical therapy, Neely continues to report ongoing neck and back pain, even while taking medication for pain management.  (*See, e.g.*, *id.* at 668-70, 756-59, 860, 862, 938-74)  Neely also alleges that he continues to suffer from muscle spasms, tenderness, reduced range of motion, and stiffness as a result of his injuries.  (*See, e.g.*, *id.* at 707-08, 749-58, 894-901)

### b.   Mental Health-related Medical History

Neely alleges that he also suffers from a number of mental health-related issues stemming from the injuries he suffered in the accident.  Below, the Court summarizes the relevant record regarding Neely's mental health history.

From the month of his accident (October 2016) through to October 2019, Neely had various physical examinations, but during those examinations, he reported that he had no anxiety or depression and that he had a desire to continue living.  (*Id.* at 324, 326, 582, 866)  Neely

---

[2]      Neely's arguments on appeal relate almost exclusively to his mental health-related medical conditions.  (D.I. 13; D.I. 16 at 2)  Therefore, the Court will here offer only a brief summary of Neely's physical medical history.

disclosed no decrease in consciousness, no confusion, no disorientation, and no memory lapse or loss. (*Id.* at 325-26)

In October 2019, Neely consulted with mental health nurse practitioner, Michal Tomaszewicz. Neely attended three sessions with Mr. Tomaszewicz, the last of which was in November 2019. (*Id.* at 976-94; D.I. 13 at 7-8) During these sessions, Neely reported chronic pain, poor sleep, feelings of hopelessness, fatigue, low energy, irritability, and an inability to actively play with his grandchildren. (Tr. at 976, 983) In his treatment notes, Mr. Tomaszewicz described Neely as having a careless appearance, feeling depressed, anxious and irritated, having a constricted affect, having impaired abstract reasoning and being constantly tired with little energy. (*Id.* at 978-79, 983-84, 989-90) That said, in these sessions, Neely was also reported to have normal judgment and insight, no signs of psychotic thought process or content, intact recent and remote memory and intact concentration and attention span. (*Id.*)

Mr. Tomaszewicz diagnosed Neely in October 2019 as having major depressive disorder, generalized anxiety disorder, mood disorder, and insomnia; he proscribed medication for Neely to address each of these issues. (*Id.* at 979, 985, 991) Neely was never hospitalized during this time period, nor was he participating in psychotherapy. (*Id.* at 976, 979, 984)

On December 10, 2019, Mr. Tomaszewicz completed a Psychological Functional Capacity statement regarding Neely. (*Id.* at 995-97) Therein, Mr. Tomaszewicz answered "no" to the question asking whether Neely had "the ability to perform simple, repetitive work 40 hours per week, without missing more than 2 days of work per month[.]" (*Id.* at 995) By way of explanation, Mr. Tomaszewicz wrote that Neely had "changes in his sleep [that] lead to fatigue . . . also poor focus, low concentration [and] changes in mood and energy[.]" (*Id.*) Mr. Tomaszewicz also wrote "no" when asked if Neely had the ability to remain "on task" for "at

5

least 80% of the work day[,]" explaining that this was due to the "severity and frequency of [Neely's] depressive symptoms" and his difficulty in controlling his insomnia.  (*Id.*)  Mr. Tomaszewicz also identified the degree of Neely's impairment as being "Moderate Severe" or "Severe" in a few areas, including "[s]ustain work performance [and] attendance in a normal work setting[,]" "[c]ope with pressures of ordinary work" and "[p]erform routine, repetitive tasks under ordinary supervision[.]"  (*Id.* at 997)

### 2.    The Administrative Hearing

At the administrative hearing held on January 7, 2020, the ALJ heard Neely's testimony and that of Christina Beatty-Cody, an impartial Vocational Expert ("VE").  (*Id.* at 60-97)

### a.    Neely's Testimony

At the hearing, Neely provided some basic personal information to start and then began to discuss his work history.  (*Id.* at 64-76)  In 2004, he worked for the Salvation Army.  (*Id.* at 66)  From 2005 to 2010, he worked for the McConnell Group; in that role, he processed invoices for contractors used by the United States Department of Housing and Urban Development ("HUD") and he reviewed the credentials of certain of those contractors.  (*Id.* at 66-69)  From 2012 to 2013, Neely was employed in a similar role at two different companies:  Corporate Allocation Services and then Catmead Information Technology.  (*Id.* at 73)  Then in 2016, Neely worked at Robert Half, where he had a different role; there, he verified and processed appraisal and closing documents for homes that would be sold through HUD.  (*Id.* at 73-75)

Eventually, questioning turned to Neely's car accident.  (*Id.* at 78, 82)  Neely testified that while driving on Interstate-95, a car cut him off and then came to a full stop in front of him; Neely's car crashed directly into that other car.  (*Id.* at 82-83)  He was transported by ambulance

to Crozer-Chester Medical Center in Chester, Pennsylvania.  (*Id.*)  In the accident, he injured his

shoulders, his pelvis and his lower back.  (*Id.*)

Neely next testified about the treatment he received for the physical injuries he sustained

in the accident.  He explained that he was seen by Dr. Pramod Yadhati and was given neck

injections that did not improve his injuries.  (*Id.* at 83-84)  He was also treated by Dr. Pawan

Rastogi; in January of 2017, Neely reported to Dr. Rastogi that he had continuing pain in his

shoulder, neck, and back.  (*Id.* at 84-85)  In April 2017, Dr. Rastogi performed surgery on

Neely's neck (a C5-6 and C6-7 anterior cervical discectomy and fusion with cervical plate) and

in November 2017, Dr. Rastogi performed surgery on Neely's back (a bilateral L4-5

laminectomy and left microdiscectomy).  (*Id.* at 85-86; *see also id*. at 319-22, 334-35, 556-61,

584, 597, 599-601)  Neely explained that he did not get any relief from his back surgery; he still

experiences back pain that will shoot up into his rectum and renders him unable to move until the

pain relents.  (*Id.* at 86, 93)  He also noted that in 2018, he visited Dr. Shelly McPhatter for

physical therapy.  (*Id*. at 86; *see also id.* at 874-93)

Neely additionally testified that in May 2018 he saw his primary care doctor, Dr. Wayne

Tucker, for sleep issues relating to his pain.  (*Id.* at 86-87; *see also id*. at 752)  Neely explained

that at present, he has a hard time sleeping and could only sleep for three to four hours at night

and for a few hours during the day.  (*Id*. at 87)  He has difficulty sleeping while lying down

because he cannot get comfortable, so he often sleeps in a chair or by laying on his side.  (*Id.* at

87-88)

Neely noted that he was also treated by a chiropractor—Dr. Matthew McIlrath—and that

his last appointment with Dr. McIlrath was in October 2019.  (*Id.* at 88)  Thereafter, Neely was

referred to Dr. Bruce Grossinger for an EMG (previously discussed above), where it was discovered that he has radiculopathy (i.e., nerve damage).  (*Id.* at 89)

Neely also explained how in late 2019, he started seeing a psychotherapist, Mr. Tomaszewicz, whom he visits about once a month.  (*Id.* at 89-90)  Neely noted that Mr. Tomaszewicz recommended that he take two types of sleeping pills, but that those pills caused problems, including that Neely would have difficulty waking up after he took the medication. (*Id.* at 90-91)

Neely completed his testimony by emphasizing that he continues to regularly experience pain "from out of nowhere" after moving around; the pain immobilizes him for a time, until it recedes.  (*Id.* at 93)

#### b.      Vocational Expert's Testimony

VE Beatty-Cody also testified during the hearing.  She explained that she was aware of Neely's previous jobs.  (*Id.* at 79)  She stated that Neely's work at Robert Half would be considered to be work as a "closing clerk"; this job is typically performed at the sedentary level of exertion (though Neely reported performing it at the medium level of exertion) and is listed as a Skilled Vocational Preparation ("SVP") Level 5 position.  (*Id.* at 81)  Neely's experience working with HUD while at the McConnell Group and in the other similar jobs he held thereafter would each be considered work as a "billing clerk"; this work would be classified as requiring a sedentary level of exertion, and was an SVP Level 4.  (*Id.*)

Next, the ALJ asked whether there were skills associated with Neely's prior jobs that would be transferrable, to which the VE responded in the negative.  (*Id.* at 94)  Then the ALJ gave the VE a hypothetical:

> [A]ssume an individual of the claimant's age, education, and
> experience if such an individual is able to perform sedentary work;
> occasionally push and pull with the upper extremities; occasionally
> climb ramps and stairs; never climb ladders, ropes, or scaffolds;
> [can] frequently balance, stoop, kneel, crouch, and crawl;
> occasionally reach overhead bilaterally; and tolerate occasional
> exposure to extreme cold, extreme heat, vibrations, and hazards.
> Would such an individual be able to perform the claimant's past
> work?

(*Id*. at 94-95)  The VE considered these limitations and noted that such an individual would be

able to perform Neely's "past work of billing clerk and closing clerk . . . as [] typically

performed in the national economy." (*Id.* at 95)  The ALJ later posed another hypothetical:

> If in addition to the limitations I[ have] already listed, the
> individual required the opportunity to move from a seated position
> to a standing position or vice versa for up to five minutes
> throughout every hour, remaining on task.  Would that impact your
> response regarding the jobs you've  . . . classified and indicated . . .
> would be available?

(*Id*.)  The VE responded that were this the case, it would not impact her response.  (*Id*.)[3]  She

concluded by confirming that her testimony was "consistent with the *Dictionary of Occupational*

*Titles* and the [*Selected Characteristics of Occupations*, or] SCO[.]"  (*Id*. at 96 (emphasis in

original))

### 3.    The ALJ's Findings

---

[3]        Neely's counsel also questioned the VE.  Counsel asked the VE "[i]f an individual
were limited with the dominant arm to less than occasional reaching, would any of the past jobs
be available?" (Tr. at 95)  The VE noted that they would not be available.  (*Id.*)  Counsel also
asked the VE, in her professional experience, what an employer's tolerance would be for "off
task behavior[.]"  (*Id.*)  The VE stated that "[l]ess than 15% of the work day and that would be
above and beyond the breaks typically allowed."  (*Id.* at 95-96)  Counsel also asked the VE what,
in her professional experience, would be an employer's "tolerance for absences[.]"  (*Id.* at 96)
The VE noted that, in her experience, "if an employee has absences of more than one day per
month, it would be considered excessive by the employer and work preclusive."  (*Id.*)

On January 28, 2020, the ALJ issued the decision, which included the following seven

findings:

> 1.  The claimant meets the insured status requirements of the
> Social Security Act through December 31, 2022. . . .
>
> 2.  The claimant has not engaged in substantial gainful activity
> since October 11, 2016, the alleged onset date (20 CFR 404.1571
> *et seq*., and 416.971 *et seq*.). . . .
>
> 3.  The claimant has the following severe impairments:
> degenerative disc disease of cervical and lumbar spine; peripheral
> neuropathy and radiculopathy; and obesity (20 CFR 404.1520(c)
> and 416.920(c)). . . .
>
> 4.  The claimant does not have an impairment or combination of
> impairments that meets or medically equals the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
> (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
> and 416.926). . . .
>
> 5.  After careful consideration of the entire record, the [ALJ] finds
> that the claimant has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> except occasionally push and pull with the upper extremities;
> occasionally climb ramps and stairs; never climb ladders, ropes, or
> scaffolds; frequently balance, stoop, kneel, crouch, and crawl;
> occasionally reach overhead bilaterally; and tolerate occasional
> exposure to extreme cold, extreme heat, vibrations, and hazards. . .
> .
>
> 6.  The claimant is capable of performing past relevant work as a
> closing clerk and billing clerk.  This work does not require the
> performance of work-related activities precluded by the claimant's
> residual functional capacity (20 CFR 404.1565 and 416.965). . . .
>
> 7.  The claimant has not been under a disability, as defined in the
> Social Security Act, from October 11, 2016, through the date of
> this decision (20 CFR 404.1520(f) and 416.920(f)).

(*Id.* at 45-51 (emphasis omitted))  The relevant additional content of the ALJ's decision will be

discussed in greater detail below.

## II.      STANDARD OF REVIEW

### A.      Motion for Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  "The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  In determining the appropriateness of summary judgment, the Court

must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-

moving party' but not weighing the evidence or making credibility determinations."  *Hill v. City

of Scranton*, 411 F.3d 118, 124-25 (3d Cir. 2005) (alteration in original) (quoting *Reeves v.

Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B.      Review of the ALJ's Findings

The Court must uphold the Commissioner's factual findings if they are supported by

"substantial evidence[.]"  *See* 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir.

2000).  "Substantial evidence" may be less than a preponderance of the evidence but must be

more than a mere scintilla of evidence; it is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion[.]"  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d

Cir. 2005) (internal quotation marks and citation omitted).  In analyzing whether substantial

evidence supports the Commissioner's factual findings, the Court may not undertake a *de novo*

review of the Commissioner's decision and may not re-weigh the evidence of record.  *See

Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  Even if the reviewing

Court would have decided the factual inquiry differently, it must defer to the ALJ and affirm the

Commissioner's decision, so long as the decision is supported by substantial evidence.  *Hartranft

v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Monsour*, 806 F.2d at 1190-91.

11

In addition to conducting an inquiry into whether substantial evidence supports the ALJ's determination, the Court must also review the ALJ's decision to determine whether the correct legal standards were applied. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The Court's review of legal issues is plenary. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

## III.    DISCUSSION

In resolving the instant motions, the Court will first summarize the relevant law regarding the disability determination process. It will then go on to assess Neely's arguments on appeal.

### A.    Disability Determination Process

Title II of the SSA "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the SSA provides for the payment of disability benefits to indigent persons under the SSI program. *Tate v. Berryhill*, C.A. No. 15-604-LPS, 2017 WL 1164525, at *5 (D. Del. Mar. 28, 2017). To qualify for DIB benefits, the claimant must establish that he was disabled prior to the date he was last insured. 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined for purposes of DIB and SSI as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A) & 423(d)(1)(A); *see also Tate*, 2017 WL 1164525, at *5. A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

12

exists in the national economy[.]"  42 U.S.C. §§ 1382c(a)(3)(B) & 423(d)(2)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003); *Tate*, 2017 WL 1164525, at *5.

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.  *See* 20 C.F.R §§ 404.1520 & 416.920; *see also Russo v. Astrue*, 421 F. App'x. 184, 188 (3d Cir. 2011).  If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further.  *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity); 20 C.F.R. § 416.920(a)(4)(i) (same).  If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe.  20 C.F.R. § 404.1520(a)(4)(ii) (mandating a finding of non-disability when claimant's impairments are not severe); 20 C.F.R. § 416.920(a)(4)(ii) (same).  If the claimant's impairments are severe, then the Commissioner proceeds to step three and must compare the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work.  20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  When a claimant's impairment meets or equals an impairment in the listings, the claimant is presumed disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).  If a claimant's impairment fails to meet or medically equal any listing, the Commissioner should proceed to steps four and five.  20 C.F.R. §§ 404.1520(e) & 416.920(e).

13

At step four, the Commissioner determines whether the claimant retains the residual functional capacity (or "RFC") to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv) (stating that a claimant is not disabled if he or she is able to return to past relevant work); 20 C.F.R. § 416.920(a)(4)(iv) (same); *Plummer*, 186 F.3d at 428.  A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008) (internal quotation marks and citation omitted).  "The claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work."  *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to his or her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him or her from adjusting to any other available work.  20 C.F.R. § 404.1520(a)(4)(v) & (g) (mandating a finding of non-disability when the claimant can adjust to other work and a finding of disability when the claimant cannot do so); 20 C.F.R. § 416.920(a)(4)(v) & (g) (same); *Plummer*, 186 F.3d at 428.  At this last step, the burden of production is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits.  *Plummer*, 186 F.3d at 428.  In other words, the ALJ must show that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]."  *Id.*  When making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments.  *Id.*  At this step, the ALJ often seeks the assistance of a VE (as the ALJ did here).  *Id.*

## B.    Neely's Arguments on Appeal

On appeal, Neely presents two sets of arguments.  First, he asserts that the ALJ erred in various ways at step two in determining that his mental impairments were not severe.  (D.I. 13 at

11-16)  Second, he argues that the ALJ's hypothetical question and RFC determination failed to include limitations relating to all of his credibly established mental health limitations.  (*Id.* at 16-19)  The Court addresses these arguments in turn.

### 1.       The ALJ's Severity Findings at Step Two

At step two, although the ALJ found that certain of Neely's physical conditions amounted to severe impairments, she did not find that any of Neely's mental health conditions were severe. (Tr. at 45-47)  In the ALJ's decision itself, the ALJ explicitly addressed only one of Neely's mental health conditions:  depression.  (*Id.*)  As to that condition, the ALJ wrote that Neely's "medically determinable mental impairment of depression does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore non[-]severe." (*Id*. at 46)

In explaining the rationale for this "non-severe" determination as to Neely's depression, the ALJ noted that Mr. Tomaszewicz had opined to the contrary, but she went on to explain why she felt that Mr. Tomaszewicz's opinion was not persuasive.  (*Id.*)  The ALJ also considered the four broad areas of mental functioning for evaluating mental disorders, which are commonly known as the "paragraph B" criteria.  (*Id.*)  The ALJ concluded that Neely had no limitation in two of the areas of mental functioning ("understanding, remembering or applying information" and "adapting or managing oneself") and only a "mild" limitation in the other two areas ("interacting with others" and "concentrating, persisting or maintaining pace").  (*Id* (citing 20 C.F.R. §§ 404.1520a(c)(3) & 416.920a(c)(3); *see also* 20 C.F.R. §§ 404.1520a(d)(1) & 416.920a(d)(1) (noting that, with regard to the degree of a claimant's mental limitations, if the degree of limitation is "none" or "mild" then the Commissioner will generally conclude that the

person's impairment is "not severe"))  The ALJ cited these conclusions as further support for her "non-severe" determination.

Neely contends that the ALJ erred in various ways in deciding that his mental impairments were not severe.  (D.I. 13 at 11-16)  Neely breaks up these claims of error into four different subparts, arguing that the ALJ wrongfully failed to consider:  (1) the complete mental exam findings regarding his depression that are contained in his medical records; (2) Neely's written testimony about his limitations; (3) all of Neely's mental health impairments (including his insomnia and anxiety disorder); and (4) the cumulative effect of Neely's mental health limitations in combination with the pain and fatigue he faced due to lack of sleep.  (D.I. 13 at 12)

Below, after setting out more information about the legal standards for step two review, the Court will address all four subparts of Neely's step two-related arguments.

### a.    Step Two Legal Standards

At step two, an ALJ determines whether a claimant's health conditions amount to "severe" impairments (or, put another way, whether they are "non-severe").  A non-severe impairment is one that "does not significantly limit [the claimant's] physical ability to do basic work activities."  *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (internal quotation marks and citations omitted) (alteration in original); *see also* 20 C.F.R. §§ 404.1522(a) & 416.922(a).  "Basic work activities," as that term relates to mental activities, include:  (1) understanding, carrying out and remembering simple instructions; (2) use of judgment; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522(b)(3)-(6) & 416.922(b)(3)-(6).

This step two analysis is a *de minimis* screening device meant to dispose of groundless claims; thus, an impairment may be found "'not severe' only if the evidence establishes a slight

abnormality . . . [that has] 'no more than a minimal effect on an individual's ability to work.'" *Newell*, 347 F.3d at 546 (citation omitted).  Neely bears the burden of showing at step two that he has a medically severe impairment or combination of impairments, *see Bowen*, 482 U.S. at 146 n.5; any doubt as to whether this showing has been made is to be resolved in his favor, *Newell*, 347 F.3d at 546; *see also McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).[4]

> **b.    Whether the ALJ Failed to Consider the Complete Mental Health Exam Findings Contained in the Medical Records as to Neely's Depression**

Neely's first step two argument is that, when the ALJ was evaluating Neely's depression, the ALJ failed to "consider the complete mental exam findings contained in the medical records[.]" (D.I. 13 at 12-14)  Neely recognizes that in her step two decision, the ALJ did cite to the medical records of Neely's therapist, Mr. Tomaszewicz.  (*Id.* at 13; *see also* Tr. at 46)  But here, Neely specifically points to the ALJ's conclusion that he had only a "mild" limitation

---

[4]    Because the claims at issue here were filed after March 27, 2017, the ALJ did not need to defer to or give any specific evidentiary weight (including controlling weight) to any medical opinion, including opinions from Neely's medical sources like Mr. Tomaszewicz.  *See* 20 C.F.R §§ 404.1520c, 404.1527, 416.920c & 416.927; *see also Jones v. Kijakazi*, Civil Action No. 20-1074-SRF, 2022 WL 1016610, at *8 (D. Del. Apr. 5, 2022).  Instead, the ALJ must consider the persuasiveness of all medical opinions based on the application of five factors:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1520c(c) & 416.920c(c); *Weidner v. Kijakazi*, Civil Action No. 20-1250-MN, 2022 WL 610702, at *11 (D. Del. Feb. 1, 2022), *report and recommendation adopted* 2022 WL 610678 (D. Del. Feb. 16, 2022) (citing 20 C.F.R. § 404.1520c(a)).  "The ALJ must explain how [s]he considered the most important factors of supportability and consistency."  *Weidner*, 2022 WL 610702, at *11 (citing 20 C.F.R. § 404.1520c(b)(2)).  "Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion."  *Id.* (internal quotation marks and citation omitted)).

regarding "concentrating, persisting or maintaining pace"; Neely argues that the ALJ erred in coming to that conclusion, because the ALJ failed to consider the entirety of Mr. Tomaszewicz's records, which show that his limitations in this area were more than "mild." (D.I. 13 at 13-14 ("The totality of [the] evidence demonstrates that Mr. Neely's mental health impairments were more than slight abnormalities and impacted his ability to perform basic work activities, e.g. maintaining concentration, persistence and pace."))

In support of his argument, Neely points out, (*id.* at 13-14), that Mr. Tomaszewicz described him as being depressed, irritable and anxious. (*See, e.g.*, Tr. at 990) And that is true. But as the ALJ mentioned in her decision, in the portion of Mr. Tomaszewicz's records that seem to most directly relate to the issue of "concentrating, persisting or maintaining pace"—i.e., the section labeled "Attention Span and Concentration"—the therapist wrote that Neely's attention span and concentration were "alert" and "intact[.]" (*Id.* at 46; *see also id.* at 978, 983, 989) That kind of notation supports the ALJ's decision here.

Moreover, the ALJ explained why, as a more general matter, she felt that Mr. Tomaszewicz's depression-related medical opinion (e.g., that Neely had a "moderate severe degree of impairment" in certain areas, (*see id.* at 996-97)), was "not persuasive, as it is not supported by mental health records and is inconsistent with other medical evidence of record." (*Id.* at 46) In this regard, the ALJ noted—citing to Mr. Tomaszewicz's own records—that Neely's "mental status exam findings have remained within normal limits." (*Id.* (citing Tr. at 977-78, 990)) And indeed, there are notations in Mr. Tomaszewicz's records (in addition to those already described above) that could support this conclusion. Those include that: (1) Neely's mental status exams revealed he had intact recent and remote memory; (2) his psychomotor behavior was "within normal limits[;]" (3) his orientation to time, place and person

18

was "within normal limits[;]" (4) his fund of knowledge was "within normal limits[;]" (5) his judgment and insight were "within normal limits[;]" and (6) while the content of his thought processes was "scattered" it was also "clear, logical [and] relevant[,]" and he was thinking with "intact" associations and at a "normal" rate and rhythm. (*Id.* at 978-79, 983-84, 989-90) Moreover, Neely was never hospitalized during the relevant time period and was not participating in psychotherapy. (*Id.* at 976, 984, 990)[5]

In light of all of this, there is substantial evidence to support the ALJ's conclusion that Neely's depression was not severe—that is, that his depression, standing alone, amounted to a "slight abnormality" that had "no more than a minimal effect on [Neely's] ability to work." *Newell*, 347 F.3d at 546 (internal quotation marks and citation omitted). To be sure, Mr. Tomaszewicz held a different view. But the ALJ cited evidence from Mr. Tomaszewicz's own medical records that can be read to contradict that view. This evidence amounted to "more than a mere scintilla"; it was enough evidence for a "reasonable mind" to accept as "adequate to support" the ALJ's conclusion in this regard. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). That is all that is required. *Cf. Charlier v. Kijakazi*, C.A. No. 20-1327-CFC-JLH, 2022 WL 606327, at *3 (D. Del. Feb. 28, 2022), *report and recommendation adopted* 2022 WL 1770336 (D. Del. June 1, 2022) (holding that the ALJ's finding that the claimant's depression

---

[5]      Although the ALJ did not specifically cite to Neely's hearing testimony during the step two portion of her decision, it is notable that during that testimony, Neely did not provide much in the way of evidence as to how his *depression* actually impacted his ability to concentrate, persist or maintain pace during the workday. There was a point at the hearing when Neely's counsel did ask him about the issue of concentration: "So, you've been through some issues, and do you [and Mr. Tomaszewicz] talk about your pain and how it affects your ability to concentrate[?]" (Tr. at 91) But to that, Neely simply responded that he and Mr. Tomaszewicz discuss "most of all sleeping and [that Mr. Tomaszewicz has] indicated that I have high anxiety that puts me to sleep at night." (*Id.*)

was not severe was supported by substantial evidence, where the ALJ considered the claimant's own statements about his depression and certain medical opinion evidence cited by the plaintiff, but then discounted that evidence as inconsistent with other portions of the record—such as mental status exams that showed that the plaintiff had "appropriate mood and affect, normal judgment and insight, and intact recent and remote memory"); *Strogish v. Astrue*, No. 08cv757, 2008 WL 5263350, at *12 (W.D. Pa. Dec. 16, 2008) (finding that the ALJ appropriately discounted a treating physician's opinion regarding the severity of the claimant's depression, in part because the physician's opinion was contradicted by his own treatment notes).

### c.    Whether the ALJ Failed to Consider Neely's Written Testimony

Neely next argues that the ALJ "failed to consider [Neely's] written testimony" during her step two analysis.  (D.I. 13 at 12, 14)  Here, Neely is referring to the fact that on April 24, 2018, at the same time as he submitted his DIB application, Neely filled out a "Function Report — Adult" for the SSA.  (Tr. at 212-19)  In that document, Neely complained that he had difficulty sleeping and was unable to participate in social gatherings or spend time with others.  (*Id.* at 213, 216, 217 (*cited in* D.I. 13 at 14))  He also wrote that he felt like he was unable to finish what he started due to lack of sleep, and that he did not handle changes to his routine very well.  (*Id.* at 217-18 (*cited in* D.I. 13 at 14))

In the portion of her decision that discussed Neely's mental health issues, the ALJ did not explicitly cite to Neely's 2018 written testimony.[6]  And nowhere in that portion of the decision

---

[6]    That said, in describing in her decision why Neely had no limitations in the functional area of "adapting or managing oneself[,]" the ALJ noted (without citation) that Neely "testified that he is able to perform personal care and tries to do household chores."  (Tr. at 46) During his administrative hearing, Neely did not really discuss these subjects.  (*Id*. at 62-97)  But in his 2018 written testimony, Neely *did* explain how he engaged in some personal care and

20

did the ALJ make reference to the parts of that written testimony that Neely cites to here on appeal.  But the Court does not agree that this fact—at least as it relates to the ALJ's decision that Neely's depression, standing alone, was not a severe impairment—amounts to reversable error.[7]  The ALJ's decision as to the severity of Neely's depression was supported by substantial evidence, as was discussed above.  Even if Neely's written testimony from April 2018 could be said to amount to some evidence supporting a contrary conclusion on that point, "[t]he presence of [such contrary] evidence . . . does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision."  *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. App'x 761, 764 (3d Cir. 2009); *see also Rutherford*, 399 F.3d at 553 (noting that remand is not required when it would not affect the outcome of a case).  Thus, the Court does not conclude that this argument independently warrants relief.

> **d.      Whether the ALJ Failed to Consider All of Neely's Mental Impairments**

---

performed certain chores around the house.  (*Id.* at 213-15)  So the ALJ's reference in the decision to what Neely "testified" about in this regard could have been a reference to the 2018 written testimony.

[7]      As will be noted below, Neely raises—as a separate issue on appeal—the fact that the ALJ failed to consider his diagnoses of insomnia and anxiety disorder.  In light of this, the Court has considered this issue (regarding the ALJ's failure to credit certain of Neely's 2018 written testimony) solely as it relates to the ALJ's conclusion that Neely's depression was not a severe impairment.  In other words, here the Court is simply concluding that if depression had been the only mental health condition that Neely had faced in the relevant time period, then the ALJ's failure to credit Neely's 2018 written testimony would not have been sufficient to overturn the ALJ's conclusion that Neely's depression was non-severe.

However, as is further set out below, the Court has also concluded that the case should be remanded so that the Commissioner can fully consider the impact of Neely's insomnia and anxiety disorder (together with his other impairments) in the disability calculus.  It may be that when the Commissioner does so, portions of Neely's 2018 written testimony will be relevant and/or helpful to the Commissioner's analysis.  Nothing in this portion of the opinion is meant to suggest otherwise.

Neely's next argument relates to the fact that Mr. Tomaszewicz not only diagnosed him as suffering from depression, but also from, *inter alia*, insomnia and generalized anxiety disorder. (*See, e.g.*, Tr. at 991) However, the only mental health condition that the ALJ specifically addressed in her decision was Neely's depression. (*Id.* at 46) Because the ALJ's "decision is silent [as to] how she considered [Neely's] anxiety disorder and insomnia" and because these two "impairments [allegedly] contribute to his inability to sustain work[,]" Neely asserts that the ALJ's failure to consider them amounted to reversable error. (D.I. 13 at 14; *see also id.* at 12) Here, the Court agrees with Neely.

"An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence." *Rutherford*, 399 F.3d at 552 (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). A claimant may alert the ALJ to the fact that an impairment is alleged to be severe either in his disability application or at the administrative hearing; even if he does not do so by either of these means, if the claimant's medical records otherwise contain sufficient reference to the impairment, then the ALJ should consider that impairment in the benefits decision. *See Rutherford*, 399 F.3d at 552-53; *Eskridge v. Astrue*, 569 F. Supp. 2d 424, 438-39 (D. Del. 2008) (noting that while the "plaintiff did not list obesity on his disability application form[,] nor did he testify that he was obese at his hearing before the ALJ[,]" notwithstanding this, "the ALJ is required to consider all impairments that plaintiff raises or submits into the record[,]" and concluding that because the plaintiff's weight was referenced in his medical record repeatedly, this was sufficient to alert the ALJ of that impairment); *see also Daniels v. Kijakazi*, CIVIL ACTION NO. 20-4240, 2022 WL 1289127, at *4 (E.D. Pa. Apr. 29, 2022); *Miller v. Colvin*, 193 F. Supp. 3d 467, 480 (E.D. Pa. 2016) (same).

Neely did not reference his insomnia or anxiety disorder (or any other mental health condition) in his applications for benefits.  (D.I. 16 at 6)  But he did make some reference to those conditions at the administrative hearing.  This is probably easiest to see with regard to Neely's insomnia, so the Court will primarily address that condition here.  During the hearing, Neely's attorney questioned him about this issue:

> Q[:]  And . . . do you have a recollection of reporting to [Dr. Tucker] that because of pain, you were having a hard time sleeping?
>
> A[:]  Yes.  That's correct.
>
> Q[:]  Okay.  Do you still have a hard time sleeping due to pain?
>
> A[:]  Yes, I do.
>
> Q[:]  Okay.  How many hours a night do you sleep?
>
> A[:]  Only four to three.
>
> Q[:]  Three to four hours.
>
> A[:]  Yes.
>
> Q[:]  Do you have to sleep during the day?
>
> A[:]  Yes, I do, at times.

(Tr. at 87)  Neely went on to explain that he was only able to sleep for a few hours or so during the day.  (*Id.*)  He also noted that Mr. Tomaszewicz had prescribed him some medication due to this difficulty with sleeping—but this medication created other problems, as it caused Neely to sleep so deeply at night that he would urinate and not easily wake up.  (*Id.* at 90-91)

Moreover, the records from Neely's visits with Mr. Tomaszewicz make manifest the existence of these conditions.  As to Neely's insomnia, for example, the records show that Mr. Tomaszewicz formally diagnosed Neely with that condition and prescribed him Zaleplon to treat

23

it at bedtime.  (*See, e.g.*, *id*. at 990-91)  The records also discuss related symptoms, some of which seem significant to Neely's ability to work.  For example, in the records, Neely describes how:  (1) he falls asleep at "2 or 3 AM" on a recliner and gets "one and a half hours of sleep" then "wake[s] up for two hours" and the "cycle repeats day and night"; (2) he is "tired, [has] no energy, and[, relatedly, is] irritable all the time"; (3) he "can't fall asleep" at night in part due to pain; and (4) during one of his visits with Mr. Tomaszewicz, he fell asleep in the waiting room.  (*See, e.g.*, *id*. at 989 (internal quotation marks omitted))  And in his Psychological Functional Capacity report, Mr. Tomaszewicz described how "changes in sleep lead[ing] to fatigue" and "difficul[ty] control[ing] insomnia" and lack of "improv[ment in] his sleep" were all factors indicating that Neely could not work regularly.  (*Id*. at 995, 997)[8]

In sum, the ALJ erred in failing to consider at step two whether Neely's insomnia and anxiety disorder amount to severe impairments.[9]  Even if the impairments were found to be non-severe, they may have imposed additional restrictions on Neely's ability to work, but because they were not considered, the ALJ did not explore that issue as well.  Without the ALJ's analysis of these two conditions, the Court cannot conclude that the ALJ's decision is supported by substantial evidence.  *See Woodson v. Saul*, Civil Action No. 18-1928-RGA, 2020 WL 1506281,

---

[8]    Although less pronounced, Neely did make some reference to his anxiety during the administrative hearing.  (Tr. at 91 (noting that Mr. Tomaszewicz "indicated that I have high anxiety that puts me to sleep at night"))  And in Mr. Tomaszewicz's records:  (1) Neely is described as being formally diagnosed with "[g]eneralized anxiety disorder"; (2) it is noted that Neely is prescribed medicine for this disorder; and (3) Neely makes reference to his anxiety ("I am anxious in the morning.").  (*See, e.g.*, *id*. at 989, 991 (internal quotation marks omitted))

[9]    Although Neely clearly raised this issue in his opening brief, (D.I. 13 at 12-14), the Commissioner did not discuss it at all in her answering brief, (D.I. 16).  (D.I. 18 at 3 (Neely noting that "[t]he defendant's argument is silent about this failure"))

at *2 (D. Del. Mar. 30, 2020) (concluding that the ALJ erred at step two, requiring remand, by failing to address the plaintiff's bipolar disorder, where the plaintiff had been diagnosed with that disorder by two different treating medical providers); *Kirk v. Saul*, C.A. No. 20-245-LPS, 2021 WL 2823122, at *2 (D. Del. July 7, 2021) (concluding the same, where the claimant asserted at the administrative hearing that his depression and anxiety were impairments and the record contained supporting evidence, but where the ALJ nevertheless did not determine whether these conditions "rose to the level of disability"); *Scott v. Saul*, Civil Action No. 1:17-1659, 2019 WL 3817508, at *5 (D. Del. Aug. 14, 2019) (concluding that because the plaintiff's medical records indicated that she had generalized anxiety disorder, and because those records were readily available to the ALJ, the ALJ's failure to specifically consider that condition at step two required remand, because the Court could not know whether the ALJ would have considered this to be a severe impairment).

Therefore, this issue will require remand of this case for further proceedings, so that the Commissioner can determine whether Neely's insomnia and anxiety disorder amount to severe impairments (and the extent to which any restrictions imposed by those impairments affect Neely's ability to perform relevant work).

> **e.    Whether the ALJ Failed to Consider the Cumulative Effect of Neely's Mental Impairments in Combination with his Pain and Fatigue**

Neely next argues that the ALJ erred by failing to consider the cumulative effect of Neely's mental impairments in combination with his pain and fatigue when making the severity assessment. (D.I. 13 at 14-15) This argument is a close cousin of the last one, and again the Court agrees that it has merit. "[F]ailure to recognize a mental illness necessarily means that the ALJ did not consider whether the cumulative effect of an additional mental illness would change

25

the ALJ's impression of the severity of [a p]laintiff's limitations." *Woodson*, 2020 WL 1506281, at *2; *see also Scott*, 2019 WL 3817508, at *5 (noting that in such circumstances, an ALJ's opinion "fails to consider [that] the cumulative effect of multiple mental illnesses could change the ALJ's impression of the severity of [the claimant's] limitations" and that had the ALJ considered both the assessed and unassessed mental health conditions together, the ALJ "might have concluded that [the claimant] has more than a mild limitation in one of the four 'paragraph B' areas").[10]

Thus, remand of the case is also required for this additional reason—i.e., so that the Commissioner can consider whether the limitations associated with Neely's anxiety disorder and insomnia, considered in combination with the limitations associated with Neely's other impairments, affect the severity determination.[11]

### 2. The ALJ's Failure to Consider Neely's Credibly Established Limitations

Neely's final argument on appeal is that the ALJ erred in her RFC determination by failing to include all of Neely's credibly established limitations—more specifically, certain limitations relating to Neely's mental health limitations. (D.I. 13 at 16)

---

[10]     Again, Neely clearly raised this issue in his opening brief and cited to cases like *Woodson* and *Scott* in support. (D.I. 13 at 14-15)  And again, the Commissioner did not discuss the issue in her answering brief, nor did she address *Woodson* or *Scott*. (D.I. 16).

[11]     The Commissioner appears to contend that any error at step two was harmless because the ALJ proceeded through the remaining steps of the analysis and did not merely stop at step two.  The Court rejects this argument.  By failing to consider Neely's insomnia and anxiety order at step two, the ALJ necessarily did not consider whether these were severe impairments that alone, or in conjunction with other of Neely's impairments, rendered him disabled.  It is possible, for example, that these impairments could have been deemed severe, and that related limitations could have resulted in a step four RFC determination that would ultimately lead to a disability determination at step five.  *See Kirk*, 2021 WL 2823122, at *2 n.1 (internal citations omitted); *see also* (D.I. 13 at 15-16).

26

The Third Circuit has stated that "a hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments." *Rutherford*, 399 F.3d at 554 (internal quotation marks and citations omitted) (emphasis in original). "Reliance on an expert's answer to a hypothetical question will not constitute substantial evidence unless all credibly established limitations are included; remand is required where the hypothetical question is deficient." *Layfield v. Colvin*, Civil Action No. 15-358-SLR-SRF, 2016 WL 4578327, at *13 (D. Del. Sept. 1, 2016) (citing *Rutherford*, 399 F.3d at 554), *report and recommendation adopted* 2016 WL 5213902 (D. Del. Sept. 20, 2016). This includes limitations stemming from medically supported impairments that are both severe and non-severe. *Weidner*, 2022 WL 610702, at *9; *Woodson*, 2020 WL 1506281, at *3. An ALJ must include credibly established limitations in both the hypothetical question posed to the VE and in her RFC assessment. *See Watson v. Saul*, C.A. No. 18-880 (MN), 2020 WL 2737012, at *10-11 (D. Del. May 26, 2020). The Third Circuit has provided guidance on when a limitation is "credibly established[:]"

> Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. . . . Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. . . . Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason. . . . Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it.

*Rutherford*, 399 F.3d at 554 (internal quotation marks and citations omitted).

In coming to the conclusion that Neely's depression was non-severe, the ALJ found that Neely suffered "mild" limitations in two of the four broad areas of mental functioning: (1) interacting with others and (2) concentrating, persisting or maintaining pace. (D.I. 13 at 17; Tr. at 46) Neely argues that the ALJ failed to consider these two "mild" limitations when making her RFC determination or in posing the hypothetical questions to the VE. (D.I. 13 at 17; Tr. at 46-47, 94-95) As such, Neely asserts that a remand is required. (D.I. 13 at 16) For her part, the Commissioner argues, without any further explanation, that the ALJ "included all of Plaintiff's limitations that were supported by the evidence. . . . The evidence did not support a finding that Plaintiff required additional limitations." (D.I. 16 at 7)

The Court concludes that the ALJ's RFC assessment and hypothetical questions were deficient as a matter of law. Despite finding that Neely suffered from mild limitations due to his depression, the ALJ's RFC assessment/hypothetical questions did not include reference to those limitations (or indeed, to any limitations that were related to Neely's depression). Given the ALJ's finding that Neely suffered from some medically determinable depression-related limitations (even if "mild"), the ALJ was required to address those limitations in the RFC assessment/hypothetical questions—or, at the very least, to make reference to the limitations at this step and then explain her reasons for failing to include them in the RFC assessment/hypothetical questions. The ALJ failed to explicitly do so, (Tr. at 47-51; 94-96), which amounts to reversable error. *See Snider v. Saul*, Civil Action No. 19-1907-MN-SRF, 2021 WL 3090870, at *9 (D. Del. July 22, 2021) ("Because the ALJ found that Snider's non-severe anxiety, adjustment disorder, and depression were medically supported, and because he acknowledged mild limitations in connection with her anxiety, adjustment disorder, and depression, 'the ALJ had a duty to address those limitations in the RFC assessment and the

hypothetical question posed to the VE.'") (quoting *Moore v. Colvin*, 239 F. Supp. 3d 845, 860 (D. Del. 2017)), *report and recommendation adopted* 2021 WL 3475676 (D. Del. Aug. 6, 2021); *Woodson*, 2020 WL 1506281, at *3 ("Having found that Plaintiff's non-severe mental impairments were medically supported, and having acknowledged that there were mild limitations associated therewith, the ALJ had a duty to address those limitations in the RFC assessment and the hypothetical question posed to the vocational expert."); *Donato v. Berryhill*, C.A. No. 18-476-CFC-MPT, 2019 WL 3290988, at *15 (D. Del. July 22, 2019) (same), *report and recommendation adopted* 2019 WL 4256690 (D. Del. Sept. 9, 2019); *Layfield*, 2016 WL 4578327, at *14 (same); *see also Charlier*, 2022 WL 606327, at *3-4 (stating that an ALJ is required to at least *consider*, but not necessarily *include*, all medically determinable impairments in an RFC assessment, and finding that the ALJ had engaged in a "detailed discussion" of, *inter alia*, the plaintiff's claimed mental health limitations at step four).

The ALJ's failure to analyze the effects of Neely's mild mental limitations on his ability to work at steps four and five was particularly important, in view of the ALJ's conclusion that Neely could perform his past semi-skilled and skilled relevant work. *Snider*, 2021 WL 3090870, at *9; *Layfield*, 2016 WL 4578327, at *14. The VE categorized Neely's past employment as a closing clerk as a skilled position at SVP 5, and his prior work as a billing clerk as a semi-skilled position at SVP 4. (Tr. at 81) "Courts have found that 'even minimal deficits in these areas of functioning could impact [a plaintiff's] ability to successfully perform the [skilled] occupation.'" *Layfield*, 2016 WL 4578327, at *14 (quoting *Harmon v. Astrue*, Civil Action No. 10-6781, 2012 WL 94617, at *2 (E.D. Pa. Jan. 11, 2012)).[12]

---

[12]    In his opening brief, Neely cited to many of the cases referenced in this subsection of the Court's opinion, in explaining why the ALJ erred by failing to explicitly take

Therefore, this case will be remanded for the additional reason that the Commissioner should address—as part of the RFC analysis and in the hypothetical questions posed to the VE— whether Neely's mild depression related-limitations impact his ability to perform relevant work (and if so, how).

## IV.   CONCLUSION

For the reasons set forth in this Memorandum Opinion, Neely's motion for summary judgment is GRANTED-IN-PART and DENIED-IN-PART and the Commissioner's cross-motion for summary judgment is DENIED.  The case is REMANDED for further proceedings consistent with this opinion.  An appropriate Order will issue.

---

into account his mild depression-related limitations in the RFC calculus and as part of the hypothetical questions.  (D.I. 13 at 18-19)  In her answering brief, the Commissioner did not address any of these cases.